**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LEGO A/S, LEGO SYSTEMS, INC., <br> & LEGO JURIS A/S, <br>      *Plaintiffs*, <br><br>     v. <br><br> OYO TOYS, INC. <br>     *Defendant*. | No. 3:19-cv-01610 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS OR TO TRANSFER VENUE**

Plaintiffs LEGO A/S ("LEGO"), LEGO Systems, Inc. ("LEGO Systems"), and LEGO

Juris A/S ("LEGO Juris") (collectively, "Plaintiffs" or the "LEGO Group"), have sued OYO

Toys, Inc. ("OYO Toys" or "Defendant") and MARS 2000, Inc.,[1] for (1) copyright infringement

under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*; (2) trademark infringement under

Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a); (3) trademark infringement, false

designation of origin, and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15

U.S.C. § 1125(a)(1)(A); (4) common law trademark infringements, unfair competition, and

misappropriation; and (5) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen.

Stat. §§ 42-110a *et seq*. Am. Compl., ECF No. 37 (Mar. 18, 2020).

OYO Toys has moved to dismiss the Complaint for lack of personal jurisdiction or, in the

alternative, to transfer venue. Def.'s Mot. for Partial Dismissal of Pls.' Am. Compl. and

Renewed Request for Transfer, ECF No. 40 (Mar. 31 2020) ("Def.'s Mot.").

---

[1] On June 5, 2020, following the filing of a stipulation of dismissal with prejudice, the Court dismissed MARS 2000, Inc., from the case as a defendant. Order, ECF No. 56 (June 5, 2020).

For the following reasons, the motion to dismiss for lack of personal jurisdiction is **DENIED** as moot, because the alternative motion to transfer the case to the District of Massachusetts is **GRANTED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

The LEGO Group comprises the following entities: LEGO and LEGO Juris, both private companies located in Denmark, and LEGO Systems, a Delaware corporation with a principal place of business in Connecticut. Am. Compl. ¶¶ 1–3.

OYO Toys allegedly is a Delaware corporation with a principal place of business in either Hudson, Massachusetts, or Brookline, Massachusetts. *Id.* ¶ 4. OYO Toys allegedly does business in Connecticut, despite "not [being] registered to conduct business in the State of Connecticut." *Id.*

In 1978, the LEGO Group allegedly introduced the Minifigure figurine (the "LEGO Minifigure"). *Id.* ¶ 13. The LEGO Group allegedly has common law trademark rights in the LEGO Minifigure "by virtue of its continuous use of the mark in commerce throughout the U.S. since 1978." *Id.* ¶¶ 15, 19.

On January 21, 1994, LEGO allegedly registered copyrights with Registration Number sVA0000655104 and VA0000655230 (the "LEGO Minifigure Copyrights") with the United States Copyright Office ("USCO"). *Id.* ¶ 14 (citing Ex. A: Certificate of Registration, ECF No. 37-1 at 2 (Jan. 21, 1994); Ex. B: Certificate of Registration, ECF No. 37-2 at 2 (Jan. 21, 1994)). LEGO Systems allegedly owns the "exclusive rights in the U.S. to distribute the 3D sculpture and derivative works of the [LEGO Minifigure]." *Id.*

On February 23, 2016, LEGO Juris allegedly registered the trademark with Registration Number 4,903,960 for the LEGO Minifigure (the "LEGO Minifigure Trademark") with the United States Patent and Trademark Office ("USPTO"). *Id.* ¶ 18 (citing Ex. C: Trademark Register, ECF No. 37-3 at 2 (Feb. 23, 2016)). LEGO Systems allegedly is "the U.S. licensee with the rights to use and sublicense the [LEGO] Minifigure Trademarks and other trademarks." *Id.* ¶ 19.

OYO Toys allegedly sells figurines (the "OYO Minifigure") similar to the overall look and feel of the LEGO Minifigure. *Id.* ¶ 23. OYO Toys allegedly advertises and sells the OYO Minifigure on its website, http://store.oyosports/com/, which is available to customers in Connecticut. *Id.* ¶ 25. The OYO Minifigure allegedly is available for purchase at Barnes & Nobles retail locations throughout the U.S., including Connecticut locations. *Id.* ¶ 26.

The LEGO Group alleges that the OYO Minifigure is an unauthorized reproduction of the LEGO Minifigure Copyrights and LEGO Minifigure Trademarks. *Id.* ¶ 27. The LEGO Group alleges OYO Toys had actual notice of LEGO Minifigure Copyrights and LEGO Minifigure Trademarks "since at least as early as July 29, 2019." *Id.* ¶ 28.  The LEGO Group "has no agreement of any kind with OYO that would authorize the manufacture or sale" of the OYO Minifigure. *Id.* ¶ 30.

On August 31, 1999, LEGO Juris allegedly obtained trademarks with the USPTO for Registration Numbers 2,273,314 and 2,273,321 for cylindrical surface features covering "'toy figures and construction toys,' amongst other goods" (the "LEGO Cylinder Trademarks"). *Id.* ¶ 36 (citing Ex. D; Ex. E) (emphasis omitted).

On February 1, 2005, LEGO Juris allegedly obtained trademarks with the USPTO for Registration Number 2,922,658 "for an eight stud brick in a two-by-four arrangement, covering,

'construction toys'" (the "LEGO Brick Trademarks") (collectively with LEGO Cylinder

Trademarks, the "LEGO Stud Trademarks"). *Id.* ¶ 37 (citing Ex. F) (emphasis omitted). LEGO

Systems allegedly is "the U.S. licensee with the right to use and sublicense LEGO Stud

Trademarks." *Id.*

The LEGO Group allegedly also has common law trademark rights in the LEGO

Cylinder and LEGO Brick Trademarks by "virtue of its continuous use of the marks in

commerce throughout the U.S." since 1961 and 1987, respectively. *Id.* ¶¶ 38–39.

OYO Toys allegedly uses construction bricks, the four stud brick, and cylindrical

protrusions as source identifiers (the "OYO Stud Trademarks") that are "confusingly similar to

the LEGO Group's Stud Trademarks." *Id.* ¶¶ 43, 45–46. The LEGO Group allegedly "has no

agreement of any kind with OYO that would authorize the use of the [LEGO] Stud Trademarks."

*Id.* ¶ 47.

### B.  Procedural History

On October 11, 2019, the LEGO Group filed their Complaint. Compl., ECF No. 1 (Oct.

11, 2019).

On February 26, 2020, OYO Toys filed a motion to dismiss and a supporting

memorandum. Def.'s Mot. to Dismiss for Failure to State Claims Upon Which Relief Can Be

Granted and Lack of Personal Jurisdiction, or for Transfer to the District of Mass., ECF No. 29

(Feb. 26, 2020) ("Def.'s Mooted Mot."); Mem. of Law in Supp. of Def.'s Mooted Mot., ECF No.

29-1 (Feb. 26, 2020) ("Def.'s Mooted Mem.").

On March 18, 2020, Plaintiffs filed an Amended Complaint. Am. Compl.

On the same day, Plaintiffs timely filed a memorandum in opposition to OYO Toys's

motion to dismiss. Opp'n to Mot. for Transfer, ECF No. 38 (Mar. 18, 2020).

On March 31, 2020, OYO Toys filed a reply to Plaintiffs' response to the first motion to dismiss. Def.'s Reply, ECF No. 40 (Mar. 31, 2020).

On the same day, OYO Toys moved to dismiss the Amended Complaint. Def.'s Mot.; Mem. of Law in Supp. of Def.'s Mot., ECF No. 40-1 (Mar. 31, 2020) ("Def.'s Mem.").

On April 21, 2020, Plaintiffs opposed the second motion to dismiss. Pls.' Opp'n to Def.'s Mot., ECF No. 47 (Apr. 21, 2020) ("Pls.' Opp'n").

On May 5, 2020, OYO Toys replied. Def.'s Reply Br. in Supp. of Def.'s Mot., ECF No. 49 (May 5, 2020) ("Def.'s Reply").

On June 4, 2020, Plaintiffs filed a stipulation to dismiss Mars 2000, Inc. from the case with prejudice. Stipulation of Dismissal, ECF No. 55 (June 4, 2020).

On June 5, 2020, the Court terminated Mars 2000, Inc., as a defendant. Order, ECF No. 56 (June 5, 2020).

On July 15, 2020, the Court held a telephonic motion hearing on the motion to dismiss. Minute Entry, ECF No. 60 (July 15, 2020).

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(2) Motion to Dismiss

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The plaintiff therefore must make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"The *prima facie* showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.*; *see also*

*Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). A court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

A court must apply Connecticut's long-arm statute, which provides that "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." *Thomason v. Chem. Bank*, 234 Conn. 281, 286 (Conn. 1995). If the court has personal jurisdiction over the defendant under the long-arm statute, then the court will consider whether jurisdiction would comport with the due process clause of the United States Constitution. *See Licci ex rel. Licci v. Lebanese Canadian Bank*, 723 F.3d 161, 168 (2d Cir. 2013); *see also Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 249–50 (Conn. 1983) (explaining that the court need only address due process considerations if it determines that jurisdiction exists under the long-arm statute).

### B.  Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); *accord Gottlieb v. U.S. Sec. & Exch. Comm'n*, 723 F. App'x 17, 19 (2d Cir. 2018).

The objectives of section 1404(a) are "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal quotations omitted). The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. *Excelsior Designs, Inc. v. Sheres,* 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (citing *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.1950)); *see also United Rentals, Inc. v. Pruett,* 296 F.Supp.2d 220, 228 (D. Conn. 2003) (placing burden on movant despite presence of forum-selection clause).

## III.    DISCUSSION

The LEGO Group sets forth five claims for relief against OYO Toys: (1) copyright infringement of the LEGO Minifigure Copyrights in violation of the Copyright Act of 1976, Am. Compl. ¶¶ 48–55; (2) trademark infringement of the LEGO Minifigure Trademarks in violation of Section 32(a) of the Lanham Act, *id.* ¶¶ 56–61; (3) trademark infringement, false designation of origin, and unfair competition related to the LEGO Minifigure and Stud Trademarks in

violation Section 43(a)(1)(A) of the Lanham Act, *id.* ¶¶ 62–67; (4) common law trademark

infringements, unfair competition, and misappropriation, *id.* ¶¶ 68–73; and (5) "unfair

competition and unfair or deceptive acts or practices in the conduct of trade or commerce in

violation of the Connecticut Unfair Trade Practices Act," *id.* ¶¶ 74–90.

### A.  Rule 12(b)(2) Motion Against LEGO and LEGO Juris

"[A] court cannot render a judgment without first obtaining personal jurisdiction over the

parties." *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 576 (2008). "Ordinarily, the

defendant has the burden to disprove personal jurisdiction." *Samelko v. Kingstone Ins. Co.*, 329

Conn. 249, 256 (2018) (citing *Cogswell v. Am. Transit Ins. Co.*, 282 Conn. 505, 515 (2007)).

"However, if the defendant challenging the court's personal jurisdiction is a foreign corporation .

. . it is the plaintiff's burden to prove the court's jurisdiction." *Id.* (internal quotation marks and

citation omitted)). "To do so, the plaintiffs must produce evidence adequate to establish such

jurisdiction." *Id.* (internal quotation marks and citation omitted). For a defendant that is a foreign

corporation, "a Connecticut court may obtain personal jurisdiction . . . only if [the] long arm

statute permits it." *Id.* at 257 (citing *Kenny v. Banks*, 289 Conn. 529, 533 (2008)).

Under Connecticut General Statutes § 33-929(e), "[e]very foreign corporation which

transacts business in this state in violation of Section 33-920[2] shall be subject to suit in this

state upon any cause of action arising out of such business." Conn. Gen. Stat. § 33-929(e).

Furthermore, Section 33-929(f) provides:

> Every foreign corporation shall be subject to suit in this state, by a
> resident of this state . . . on any cause of action arising as follows:
>
> (1) out of any contract made in this state or to be performed in this
> state;

---

[2] Under Connecticut General Statutes § 33-920, "[a] foreign corporation, other than an insurance, surety or
indemnity company, may not transact business in this state until it obtains a certificate of authority from the
Secretary of the State." Conn. Gen. Stat. § 33-920.

(2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state;

(3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or

(4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).

Three requirements must be met in order for a court to exercise personal jurisdiction: "First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. . . . Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci*, 673 F.3d at 59–60). In order to assure that the last prong has been satisfied, a court must determine both "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant and whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case." *Johnson v. UBS AG*, 791 F. App'x 240, 242 (2d Cir. 2019) (summary order) (internal quotation marks omitted) (citing *Waldman*, 835 F.3d at 331).

"With respect to minimum contacts . . . a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158,

163 (2d Cir. 2010). "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984)). "A court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.*

OYO Toys argues that "only a plaintiff who resides or has a usual place of business in Connecticut can invoke [Conn. Gen. Stat. §] 33-929(f) to obtain personal jurisdiction over a foreign corporation such as [OYO Toys]." Def.'s Mem. at 8. According to OYO Toys, "Plaintiffs have asserted no facts in the Amended Complaint indicating that either [LEGO] or [LEGO Juris] has a usual place of business in Connecticut." *Id.* at 9. OYO Toys further argues that LEGO and LEGO Juris "are required to separately establish personal jurisdiction as to their claims, regardless of whether personal jurisdiction exists as to [LEGO Systems]'s claims." *Id.* (citations omitted). OYO Toys emphasizes that while the entities may be affiliated, LEGO and LEGO Juris "cannot use [LEGO Systems]'s Connecticut presence as a bootstrap to establish that they too maintain a 'usual place of business' in Connecticut for purposes of Section 33-929(f)." *Id.* at 9.

In response, the LEGO Group argues that "the exercise of personal jurisdiction over OYO comports with the due process clause because OYO has sufficient minimum contacts with Connecticut, . . . and [LEGO] and [LEGO Juris's] copyright and trademark infringement claims arise out of OYO's direct sales in Connecticut." Pls.' Opp'n at 4 (citations omitted). The LEGO Group submits that OYO Toys satisfies the two requirements to exercise personal jurisdiction over a foreign corporation under Section 33-929(e): "the corporation has transacted business in

Connecticut without having obtained a certificate of authority from the Secretary of States; and . . . the [plaintiff's] cause of action arises out of such business." *Id.* at 6 (citation omitted). The LEGO Group contends that OYO Toys has admitted it transacted business in Connecticut without a certificate of authority from the Secretary of State, *id.* at 7 (citing Solomont Decl., ECF No. 29-1 (Feb. 26, 2020)), and in the amount of "hundreds of sales to Connecticut residents," *id.* (citing OYO Toys's webstore). The LEGO Group argues that "[c]ourts in this Circuit have found one actual sale of an infringing item in the forum state is sufficient to support the exercise of personal jurisdiction where the plaintiff's claims arise out of the sale of the infringing product." *Id.* at 10 (citations omitted). In their view, OYO Toys "has not met, and cannot meet, its burden of showing that the exercise of personal jurisdiction is unreasonable and would offend the traditional notion of fair play" to violate due process. *Id.* at 11.

In reply, OYO Toys contends it "has no connection with Connecticut other than [] minimal direct product sales" amounting to only 0.5% of its total sales. Def.'s Reply at 2–3. OYO Toys distinguishes its situation from that of the cases cited by LEGO Group, *id.* at 3–6, and notes that "the term transacting business is not broadly interpreted in Connecticut," *id.* at 7 (internal formatting and citation omitted). According to OYO Toys, Connecticut's distinction between "'transacting any business' and merely 'transacting business'" in Connecticut General Statutes § 52-59b "reflects the legislature's intent to limit the jurisdictional reach of § 33-929(e)." *Id.* at 7.

As an initial matter, LEGO and LEGO Juris cannot assert personal jurisdiction under Section 33-929(f) because neither are "resident[s] of this state," nor is Connecticut a "usual place of business" for them. Conn. Gen. Stat. § 33-929(f) ("Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in

this state, whether or not such foreign corporation is transacting or has transacted business in this state . . . ."); *see* Am. Compl. ¶¶ 1, 3 (alleging that LEGO and LEGO Juris are private companies with a place of business in Denmark).

Conversely, Section 33–929(e) does not contain a residency requirement for the plaintiff, but "authorizes personal jurisdiction over a foreign corporation where: (1) the corporation has transacted business in Connecticut without having obtained a certificate of authority from the Secretary of State; and (2) the [plaintiff's] cause of action arises out of such business." *Preferred Display, Inc. v. Vincent Longo, Inc.*, 642 F. Supp. 2d 98, 104 (D. Conn. 2009) (citing *Gerber Trade Finance, Inc. v. Davis, Sita & Co., P.A.*, 128 F. Supp. 2d 86, 90 (D. Conn. 2001)). Although Section 33–929 does not define what types of business transactions violate Section 33-920, "[t]he term 'transacting business' is not broadly interpreted in Connecticut." *Milne v. Catuogno Court Reporting Servs., Inc.*, 239 F. Supp. 2d 195, 198 (D. Conn. 2002) (citations omitted). Section 33-920 excludes the following activities from constituting "transacting business":

> (1) Maintaining, defending or settling any proceeding; (2) holding meetings of the board of directors or shareholders or carrying on other activities concerning internal corporate affairs; (3) maintaining bank accounts; (4) maintaining offices or agencies for the transfer, exchange and registration of the corporation's own securities or maintaining trustees or depositaries with respect to those securities; (5) selling through independent contractors; (6) soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts; (7) creating or acquiring indebtedness, mortgages and security interests in real or personal property; (8) securing or collecting debts or enforcing mortgages and security interests in property securing the debts; (9) owning, without more, real or personal property; (10) conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature; (11) transacting business in interstate commerce.

Conn. Gen. Stat. § 33-920(b).

OYO Toys's conduct in selling its toys, including the OYO Minifigure and other allegedly infringing toys, to national distributors and retailers with locations in Connecticut cannot be considered "transacting business" here. Significantly, Section 33-920 excludes "transacting business in interstate commerce" and "selling through independent contractors" from a basis for establishing personal jurisdiction. Conn. Gen. Stat. § 33-920(b)(5) and (b)(11); *see also Ebm-Papst, Inc. v. AEIOMed, Inc.,* No. 3:08-cv-0549 (JCH), 2009 WL 291012, at *3 (D. Conn. Feb. 6, 2009) (finding that Section 33-929(e) "does not provide a jurisdictional basis for plaintiffs' suit" because "selling [goods] to national distributors and sales representatives that may or may not do business in Connecticut cannot be considered 'transacting business' in Connecticut"); *Kun Shan Ge Rui Te Tool Co. Ltd. v. Mayhew Steel Prods., Inc.*, 821 F. Supp. 2d 498 (D. Conn. 2010) (finding that a Massachusetts company's "sales to distributors cannot be considered 'transacting business' in Connecticut"). Because sales to national retailers like Barnes & Noble do not constitute "transacting business" in Connecticut, OYO Toys is not subject to suit in Connecticut for causes of action that arise from those sales.

OYO Toys's sales on its webstore may constitute "transacting business" in Connecticut. "In analyzing personal jurisdiction in the Internet context, many courts have turned to the standards set out . . . in *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*," 952 F. Supp. 1119 (W.D. Pa. 1997). *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 251 (2d Cir. 2007) (citing *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 452 (3d Cir. 2003) (calling *Zippo* the "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site")). In *Zippo,* "the court applied traditional due process 'minimum contacts' principles to determine whether jurisdiction over the out-of-state website proprietor was constitutionally

permissible." *Best Van Lines*, 490 F.3d at 251 (citing *Zippo*, 952 F. Supp. at 1112). That court

explained the concept of the "spectrum of internet interactivity":

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F. Supp. at 1124 (internal citations omitted). "[A] website's interactivity may be

useful for analyzing personal jurisdiction . . . , but only insofar as it helps to decide whether the

defendant 'transacts any business' in [the relevant state]—that is, whether the defendant, through

the website, 'purposefully availed himself of the privilege of conducting activities within [the

state], thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 252

(describing *Zippo*'s analysis in relation to New York's long-arm statute).

In this case, from November 15, 2018 to July 15, 2019, OYO Toys "generated

approximately $1.6 million in revenue," with "direct sales to purchasers in Connecticut

account[ing] for .5 percent, or approximately $8,600." Solomont Decl. ¶ 10. These sales "were

made through [OYO Toys]'s website . . . which was accessible to consumers in all 50 states and

contained no content specific to Connecticut." *Id.* OYO Toys is a Delaware corporation located

in Massachusetts, is not registered to conduct business in Connecticut, and does not target

Connecticut consumers. Am. Compl. ¶ 4; Solomont. Decl. ¶¶ 11–14.

Although in "cases where individuals can directly interact with a company over their Internet site, download, transmit or exchange information, and enter into contracts with the company via computer . . . the exercise of jurisdiction is appropriate, particularly when combined with evidence of sales from the forum state," *Broad. Mktg. Int'l, Ltd. v. Prosource Sales and Mktg., Inc.,* 345 F. Supp. 2d 1053, 1061–62 (D. Conn. 2004), the limited jurisdictional reach of Section 33-929(e) cannot be ignored, *see Ryan v. Cerullo*, 282 Conn. 109, 129 n.18 (2007) ("Because § 33-929(e) applies only to foreign corporations that transact business in this state in violation of the provisions of § 33-920, it is apparent that the legislature has sought to limit the breadth of § 33-929(e)."). OYO Toys's website sales, by themselves, likely do not constitute "transacting business" in Connecticut. *Compare Broad. Mktg.,* 345 F. Supp. 2d at 1062 ("The facts of this case . . . compel the court to exercise personal jurisdiction over PSMI. Here, [defendant] not only sold and distributed products directly to Connecticut through phone solicitations, but the company also used an interactive website to both advertise its business and produce sales." (internal citation omitted)); *with Kun Shan*, 821 F. Supp. 2d at 503 ("Passive websites that require a potential customer to initiate contact with the foreign corporation by telephone, mail, or email, rather than allowing them to order directly over the Internet, cannot support personal jurisdiction." (citations omitted)). As a result, the sales from its webstore to Connecticut consumers likely do not provide a jurisdictional basis for personal jurisdiction over OYO Toys under Section 33-929(e).

Based on the above, OYO Toys likely also does not have "sufficient minimum contacts" with Connecticut to justify personal jurisdiction, nor would personal jurisdiction over OYO Toys comport with "traditional notions of fair play and substantial justice under the circumstances of this case." *Johnson*, 791 F. App'x at 242 (quoting *Waldman*, 835 F.3d at 331).

Nevertheless, although the Court may not have personal jurisdiction over the claims asserted by LEGO and LEGO Juris against OYO Toys, as explained below, in the interests of justice, the Court will transfer the case to the District of Massachusetts, instead of definitively resolving that issue. *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (recognizing that "reaching a venue motion in lieu of first addressing personal jurisdiction is sensible where the question of whether there is personal jurisdiction over a defendant is close and likely to yield further litigation" (citations omitted)); *see also Volk Corp. v. Art-Pak Clip Art Serv.*, 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977) ("[The Court] has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice.").

### B.  Transfer of Venue

"In determining whether transfer of venue is appropriate, district courts must engage in a two-part inquiry, asking: (1) whether the action might have been brought in the proposed transferee forum and, if so, (2) whether the transfer promotes convenience and justice." *MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 307 (D. Conn. 2009) (citations omitted). "On a motion to transfer under section 28 U.S.C. § 1404(a) . . . the burden is on the movant to show that the transfer is justified," and "[a]bsent a clear and convincing showing that the balance of convenience strongly favors the alternate forum . . . discretionary transfers are not favored." *Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (summary order) (internal quotation marks omitted). Under 28 U.S.C. § 1404(a), a court may only transfer a civil action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "In assessing whether an action might have been brought in the proposed transferee forum, the court must

determine whether the defendants were subject to personal jurisdiction in that forum when the action was commenced and whether venue would properly lie there." *Kalapos*, 620 F. Supp. at 307–08.

In its renewed motion to dismiss, as with its arguments against personal jurisdiction, OYO Toys incorporates by reference its arguments from the earlier, mooted motion to dismiss. Def.'s Mem. at 10. In its earlier memorandum, OYO Toys also alternatively argued for transfer to Massachusetts, where it "maintains its place of business." Def.'s Mooted Mem. at 14. In its view, "a [venue] transfer would promote judicial efficiency and economy because it would obviate the need for this Court . . . to address the personal jurisdiction question." *Id.* at 16. In response, the LEGO Group argues that venue transfer to the District of Massachusetts is inappropriate because "[OYO Toys] has not met its burden and the relevant factors weigh against transfer to the District of Massachusetts." Pls.' Opp'n at 12.

The parties do agree that the action, which arises under federal copyright and trademark laws, might have been brought in the District of Massachusetts. *See* Pls.' Opp'n at 12 n.6 ("[T]he LEGO Group does not dispute that the present action could have been brought against OYO in the District of Massachusetts[.]"). Even without the LEGO Group's assent, however, this action might have been brought in Massachusetts because OYO Toys has its place of business in Massachusetts. Am. Compl. ¶ 4.

Furthermore, federal jurisdiction arises under 28 U.S.C. § 1331 for the federal claims, and even though diversity jurisdiction is not pled in the Amended Complaint, the parties are completely diverse because none of the entities in the LEGO Group are residents of Massachusetts. Finally, venue is generally proper in a district where "any defendant resides, if all

17

defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). As a result, this action "might have been brought" in the District of Massachusetts.

In considering whether a transfer promotes convenience and justice, courts have considerable discretion, but should consider the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Gottdiener*, 462 F.3d at 106–07 (citation omitted). Courts in the Second Circuit also consider "a forum's familiarity with the governing law" and "trial efficiency and the interests of justice, based upon the totality of the circumstances." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (citation omitted). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

### 1. Plaintiff's Choice of Forum

The Second Circuit has recognized that the plaintiff's choice of forum is "a decision that is given great weight." *Gottdiener*, 462 F.3d at 107 (affirming district court's denial of motion to transfer after giving great weight to plaintiff's chosen forum in New York and because the forum was not inconvenient for defendants who resided in New Jersey and where the relevant documents were freely available in New York). The plaintiff's choice of forum is "entitled considerable weight—particularly when the plaintiff is a resident of the forum district—and should not be disturbed unless the balance of several factors is strongly in favor of defendant." *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006).

The LEGO Group emphasizes that its choice of forum is given great weight, and that it chose "the District of Connecticut as the appropriate forum, because it conducts its United States operations from Connecticut and OYO [Toys] made direct sales . . . in Connecticut." Pls.' Opp'n at 13. OYO Toys argues that the LEGO Group's choice of forum is "entitled to little deference, if any at all," because both LEGO and LEGO Juris are foreign plaintiffs, and "a party's choice of forum for 'national' claims, like trademark and copyright infringement, is of diminished significance." Def.'s Reply at 9.

The Court agrees.

"[W]hen a plaintiff's claims are nationwide—as they are in this trademark infringement action—the mere fact that a plaintiff selects one forum over others does not, without more, entitle the plaintiff's choice to controlling weight." *Zinky Elecs., LLC v. Victoria Amplifier Co.*, No. 3:09-cv-26 (JCH), 2009 WL 2151178, at *4 (D. Conn. June 24, 2009). Here, all the claims are based on federal copyright or trademark law, with attendant common law claims. Despite the LEGO Group having pled its significant ties to Connecticut, its U.S. headquarters, the owners of the copyrights and trademarks at issue are nonresidents, LEGO and LEGO Juris.

Accordingly, this factor weighs in favor of transfer to the District of Massachusetts.

### 2.  The Convenience of Witnesses

 "The convenience of the witnesses is generally considered the most important of the factors a court considers in deciding whether to transfer a case," but "[i]n order to meet[] its burden, the motion of the party seeking transfer must specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony." *Jones v. Walgreen*, 463 F. Supp. 2d 267, 274 (D. Conn. 2006). "This factor is principally aimed at weighing the relative convenience of non-party

witnesses." *Zinky Elecs., LLC*, 2009 WL 2151178, at *4. "When weighing this factor, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *ESPN*, 581 F. Supp. 2d at 547.

OYO Toys emphasizes that two "key" fact witnesses—OYO Toys's principal, David Solomont, and a non-party, Thomas Skripps, the founder of the OYO Companies, predecessors-in-interest to OYO Toys—both reside in Massachusetts. Def.'s Mooted Mem. at 17–18. OYO Toys "is not presently aware of any fact witness who resides in Connecticut . . . [or] for whom compulsory process would be unavailable in Massachusetts." *Id.* at 18.

The LEGO Group argues that "OYO Toys fails to explain how the proposed testimony is relevant or material to the parties' dispute," and that, moreover, the case "is likely to be resolved by dispositive motions before live witness testimony." *Id.* at 14–15. They further submit that the evidence offered by these two witnesses "may address the willfulness of [OYO Toys's] infringement, but is not material to the threshold issue of liability." Pls.' Opp'n at 14.

In reply, OYO Toys argues that the LEGO Group "provide[d] no evidence of any witness who would be inconvenienced if the case were to be transferred." Def.'s Reply at 9–10. Furthermore, "Plaintiffs' own actions belie their contention" as to the witnesses' testimony, because they recently sought discovery "covering, among other things, the very topics listed in Mr. Solomont's declaration." *Id.* at 9.

The Court agrees.

The LEGO Group has not identified any witnesses, while OYO Toys has offered enough information to allow the Court to "qualitatively evaluate the materiality of the testimony that the

20

witnesses may provide," *ESPN*, 581 F. Supp. 2d at 547, by identifying a third-party witness in Massachusetts who will provide relevant information. OYO Toys's showing as to the convenience of the witnesses factor here is sufficient to overcome the "great weight" that is accorded the LEGO Group's choice of forum. *See Gottdiener*, 462 F.3d at 107.

Accordingly, this factor also weighs in favor of transfer, although just slightly.

### 3.   Location of, and Access to, Sources of Proof

The Second Circuit has acknowledged that if the "documents and other evidence . . . are freely available" in the plaintiff's chosen forum, then the defendant cannot seriously argue that the forum is an inconvenient one. *Gottdiener*, 462 F.3d at 107. "In an era of electronic documents, easy copying and overnight shipping, the location of documents and other evidence assumes much less importance than it did formerly." *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 368 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012) ("[T]he Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production.").

The LEGO Group argues that the convenience of its witnesses and the location of evidence both weigh against transfer, because there "would likely be more documents and things in Connecticut than in Massachusetts, as the LEGO Group has had a large presence in Connecticut for decades." Pls.' Opp'n at 15. OYO Toys contends that modern technology "[d]eprives this issue of practical or legal weight," but "[f]or what it is worth," its documents are located in Massachusetts. Def.'s Mooted Mem. at 18 n.5.

Given the era of "electronic documents," *Capitol Records*, 611 F. Supp. 2d at 368, the Court does not find this factor particularly significant.

### 4. Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer. Where a group of defendants makes such a showing, that factor favors transfer." *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 744. Furthermore, "[i]n terms of the convenience of the parties, the Court recognizes that where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed." *EasyWeb*, 888 F. Supp. 2d at 352 (internal quotation marks omitted).

OYO Toys emphasizes that "whereas [it] has no presence at all [in] Connecticut, the LEGO Group, as a whole, has a substantial presence in the proposed transferee district of Massachusetts." Def.'s Mooted Mem. at 19. In the LEGO Group's view, the convenience of the parties is neutral. Pls.' Opp'n at 15–16.

Accordingly, the Court concludes that this factor tilts slightly in favor of OYO Toys.[3]

### 5. Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *A Slice of Pie Productions, LLC v. Wayans Bros. Entm't*, 392 F. Supp. 2d 297, 306 (D. Conn. 2005). When determining the locus of operative fact under 28 U.S.C. § 1404, "a court may determine that there are several loci of operative facts." *Id.* (internal quotation marks omitted).

---

[3] The Court further notes that, given the significant personal jurisdiction issues regarding LEGO and LEGO Juris's claims against OYO Toys, a transfer to the District of Massachusetts obviates the need for LEGO and LEGO Juris to refile their claims against OYO Toys in its resident state, if this Court lacks personal jurisdiction over OYO Toys.

The LEGO Group argues that "Connecticut has been the home of [LEGO Systems] and where the adverse impact of infringement happened," so this factor is neutral, "if not more significant in Connecticut." Pls.' Opp'n at 17–18.

In reply, OYO Toys argues that the location of LEGO Systems "does not in any way make Connecticut the loci of operative facts," because "the owners of the IP at issue are foreign entities who do not appear to be registered in Connecticut." Def.'s Reply at 10.

The Court agrees.

As detailed above, the entities with enforcement rights are foreign companies not registered to do business in Connecticut and OYO Toys, the alleged infringer, is a Massachusetts corporation not registered to do business in Connecticut.

Accordingly, because the actions constituting infringement did not occur in Connecticut would likely have occurred in OYO Toys's home state of Massachusetts, this factor weighs in favor of transfer to the District of Massachusetts.

### 6.   Availability of Process to Compel Attendance of Unwilling Witnesses

The availability of process to compel the attendance of unwilling witnesses is a factor "closely aligned" with that of "witness convenience" and it "reflects the dislocations and inequities that can arise when a court is unable to compel witnesses to testify." *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 746. This factor may be less of an issue where "[n]either party concretely identifies particular witnesses likely to present attendance challenges," though if the majority of key witnesses live in the movant's requested forum, then attendance challenges may be "more likely" in the original forum. *Id.*

OYO Toys submits that it "consists of a single person," Mr. Solomont, whose presence at any proceedings would necessarily take away from the operation of OYO Toys. Def.'s Mooted

Mem. at 17. But because neither party has alleged that any witnesses are expected to "present attendance challenges," *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 746, this factor is not a significant one in this case.

### 7. Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *EasyWeb*, 888 F. Supp. 2d at 354–55.

While the LEGO Group is an "international conglomerate" with revenue "over one billion dollars (USD) internationally," Am. Compl. ¶ 21, OYO Toys "was formed less than two years ago and has not generated any revenue since July 15, 2019, when it suspended its product sales," Def.'s Mooted Mem. at 17 (citing Compl. ¶¶ 10, 41).

The LEGO Group argues that the relative resources of the parties is of little weight because both parties "are business entities represented by counsel." Pls.' Opp'n at 17 (citations omitted). Furthermore, the LEGO Group asserts that lead counsel for OYO Toys resides in Michigan, so litigating in Massachusetts poses the same costs to it as litigating in Connecticut. *Id.* at 18.

Because "'this factor is not entitled to great weight where plaintiff and defendant are both corporations,'" *Protegrity Corp. v. Dataguise, Inc.*, No. 3:13-cv-00715 (VLB), 2014 WL 12690186, at *8 (D. Conn. Sept. 3, 2014) (citing *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998)), and neither have alleged they have insufficient resources to pursue litigation in either district, this factor is neutral. *See Kalapos*, 620 F. Supp. at 311 (finding this factor neutral when both parties are corporations, even when plaintiff was a "relatively small corporation" without a single "profitable year yet").

24

8.  **Familiarity of Forum with Law at Issue, Trial Efficiency, Interests of Justice, and Summary of Factors**

"Where a plaintiff asserts state law claims, the forum's familiarity with governing law supports retention of the action, but this factor is one of the least important factors in determining a motion to transfer." *Capitol Records*, 611 F. Supp. 2d at 368 (internal quotation marks omitted). The parties have not emphasized this factor. Here, there are no Connecticut law claims, and so "any district court" may handle the federal claims "with equal skill." *Ripmax Ltd. v. Horizon Hobby, Inc.*, No. 3:07-cv-386 (JCH), 2007 WL 2049033, at *5 (D. Conn. June 25, 2007) (finding this factor "weighs slightly in favor of a transfer" to the Northern District of California in a patent law case); *see also WorldCare Ltd. Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 366 n.49 (D. Conn. 2011) ("This Court's familiarity with governing law is also neutral, where the law to be applied is the uniform federal trademark infringement law.").

The factor of "trial efficiency and interest of justice" primarily concerns "the benefits of consolidating related cases in a common forum," which "are often substantial," because "[s]uch consolidation may advance the strong policy interests of achieving efficient pretrial discovery, avoiding duplicative litigation, and avoiding inconsistent results." *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 747. Neither party points to any related cases here, but OYO Toys highlights "the key fact that the Court can avoid having to decide the personal jurisdiction question by transferring the case to a district where everyone agrees that jurisdiction exists." Def.'s Reply at 8.

Transfer would promote efficiency because it would "prevent the waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen,* 376 U.S. at 616; *see also Worldcare*, 767 F. Supp. 2d at 358 (holding, after finding lack of personal jurisdiction over defendant, "transfer of this action will promote

judicial efficiency, allowing the plaintiff to proceed with its claim without re-filing its action and pleadings"); *Spherion Corp. v. Cincinnati Fin. Corp.,* 183 F. Supp. 2d 1052, 1059–60 (N.D. Ill. 2002) (transfer when venue is improper is in the interest of justice because dismissal of action that may be brought in another district is "time-consuming" and may be "justice-defeating").

In sum, the overall balance of interests weighs in favor of transferring the case to the District of Massachusetts, where jurisdiction exists over all claims asserted by the LEGO Group against OYO Toys, and venue is proper.

Accordingly, the case will be transferred to the District of Massachusetts.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** as moot OYO Toys's motion to dismiss for lack of personal jurisdiction, because the Court **GRANTS** its alternative motion to transfer venue to the District of Massachusetts.

Accordingly, the Clerk of Court is respectfully directed to transfer this case to the United States District Court for the District of Massachusetts.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of July, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE